(158 App. Div. 539.)

LEHNER v. NUGENT.

(Supreme Court, Appellate Division, Second Department.   October 10, 1913.)

1. DEEDS (§ 211*)—EVIDENCE—MENTAL INCOMPETENCY.

Evidence *held* not to support a finding that plaintiff was mentally incompetent when she executed a deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647; Dec. Dig. § 211.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. DEEDS (§ 211*)—EVIDENCE—DURESS.
    Evidence *held* not to sustain a finding that plaintiff executed a deed to defendant under duress.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647; Dec. Dig. § 211.*]

Appeal from Trial Term, Dutchess County.

Action by Elizabeth Lehner against Julia Nugent. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

Walter Farrington, of Poughkeepsie, for appellant.
Benjamin H. Stern, of New York City, for respondent.

JENKS, P. J. [1] I think that the evidence does not justify the judgment whereby the deed of the plaintiff to the defendant is vacated and set aside and declared null and void. The plaintiff, a woman 73 years old, lived alone without servants. She took in the defendant, who hitherto had earned her living as a seamstress and domestic servant in the small village which was the common home of the parties. They had known one another, but had not been intimate, and they seem to be of the same station in life. About a month after the defendant came to live with the plaintiff, the deed was executed and delivered. Thereby the plaintiff conveyed the premises whereon was her dwelling—valued at about $1,500—to the defendant for the consideration of $1 and upon the conditions that the plaintiff might occupy the premises for life, and that the defendant should care for and nurse the plaintiff during her life. The latter condition was stated to be by way of further consideration. There was nothing out of the ordinary in the transaction. The plaintiff, in addition to the realty, possessed about $3,000 invested in railroad bonds, and seems to have lived in her humble way out of the income thereof and whatever was returned to her from the land. It does not appear, on the other hand, that there was any one more naturally the object of the plaintiff's bounty from ties of blood or marriage or affection. On the other hand, if the defendant is to be believed, and I see no reason to discredit her story, she gave up much of her opportunities for livelihood, and devoted herself to the plaintiff.

[2] There was much testimony taken, which when analyzed is little more than the "rustic cackle of the burg," and which falls far short of sustention of the plea that the plaintiff was ill and unfit mentally and physically, at the time of the execution of the deed, so that she did not understand her act or its sequence; that the defendant made fraudulent representations to her and exercised duress over her. Indeed, the testimony of the plaintiff and that of her attorney who prepared the deed—a gentleman of "excellent reputation," to quote the official expression of the referee—indicates that the plaintiff understood her action, its purport, and its consequences. The learned referee found that the deed was read and explained to her by this attorney, and his subsequent qualification of the finding does not affect

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

those facts. The attorney testifies that he was summoned by a letter from the plaintiff, and instructed by her to draw the deed; that in explanation the plaintiff said to him that the defendant was to live with her and to care for her for the rest of her life, and that she had no other way to compensate her. And it was for this reason that the attorney sua sponte inserted the provisions in the deed which I have described. The plaintiff herself testifies that she never talked with the defendant about the deed, that up to the time of its execution she had no conversation on the subject with the defendant, and that the defendant did not tell her "anything about her having the place." I fail to find any evidence of duress.

My conclusion is hardly contradictory of the referee, although perhaps contrary. For he seems to be mainly moved to his decision by the fact that this attorney did not go further to explain to the plaintiff the full consequences of her act, and how far it went to strip her of her property. I really cannot find that, under the circumstances as detailed by the attorney, he failed in any obligation to his client. The referee finds that the plaintiff was not an invalid, in good health for her years, able to care for herself, and to go about the village without assistance. The attorney was not even a friend of the plaintiff. He had never advised her theretofore, but was called in by her, and was instructed to perform the professional work in question. If the plaintiff appeared to him well in mind and body, it was not his function to attempt to alter her instructions, or to advance arguments to change her purpose, in the face of the reasons which she gave to him, for they appear to me natural and even cogent.

A reading of the record, and between its lines as well, indicates that the defendant did all that she could to obtain and to keep the good graces of the plaintiff, and that she was hostile to those who sought to weaken her hold or to thrust her out. But we can likewise read that much of the testimony relied upon by the plaintiff emanates from those who thought that they could both punish the defendant and perhaps profit themselves. If the defendant had the plaintiff under her thumb, as these witnesses would have us believe, it seems strange that she did not interfere in the matter of the second will, and seek to make herself the principal beneficiary, instead of leaving its terms of disposition in favor of a distant charity and of a mere friend of the plaintiff, who revealed herself as hostile to the defendant.

I advise that the judgment be reversed, and that a new trial be granted, costs to abide the event, on questions of fact as well as of law. All concur.